UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CYNTHIA WHITCHER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 08-cv-634 JPG |
| ) | |
| MERITAIN HEALTH, INC., and ) | |
| PROTESTANT MEMORIAL ) | |
| MEDICAL CENTER, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Protestant Memorial Medical Center's ("Memorial") motion for summary judgment (Doc. 43). Plaintiff Cynthia Whitcher has responded to the motion (Doc. 51), and Memorial has replied to that response (Doc. 52).

**I.      Standard for Summary Judgment**

Summary judgment is appropriate where "the pleadings, the discovery and disclosed materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

**II.      Facts**

Viewing the evidence and drawing all reasonable inferences in Whitcher's favor, the Court finds the following facts for the purposes of this motion.

At all relevant times, plaintiff Whitcher was employed by defendant Memorial and was covered by the Protestant Memorial Medical Center, Inc. Employee Healthcare Plan ("Plan"), an employee welfare plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* The Plan names Memorial as its plan administrator. *See* Plan § 1.66. Memorial selected Westport Benefits, followed by Meritain Health, Inc., as its claims administrator. *See* Plan § 1.14.

Whitcher had suffered from morbid obesity and related disorders since at least March 1995. She had tried various methods of weight reduction, including several requiring prescription drugs, and her doctor, Dr. Kirk, supervised and monitored her efforts. When none

of her efforts produced the magnitude of weight loss desired, in January 2005 Dr. Kirk recommended she have bariatric surgery ("the Procedure").

Whitcher sought pre-certification under the Plan. On March 10, 2005, the claims administrator declined to approve the Procedure. It stated that the Procedure is not covered by the Plan because it must be rendered by a Memorial or Healthlink (the preferred provider organization ("PPO") the Plan required its participants to use) provider and because no diet history or psychological consultation was submitted with the pre-certification request.

In response to that denial, on May 10, 2005, Dr. Kirk submitted additional information regarding the history of Whitcher's attempts to lose weight, including the fact that she was under his care during those efforts. Dr. Kirk's memo also opined that Whitcher's psychiatric status was stable for the Procedure. Three days later, on May 13, 2005, the claims administrator again refused to approve the Procedure, finding that it was not medically necessary because the claims administrator had no medical records to support that Whitcher's weight loss efforts had been monitored by a physician. The May 13, 2005, letter encouraged her to provide such documentation or, if none existed, to participate in a medically supervised, structured weight loss program for six months, then submit the requested documentation for reconsideration of the medical necessity determination. Whitcher did not submit any additional materials and, on May 17, 2005, underwent the Procedure despite the lack of pre-certification. As a result, she incurred medical bills of approximately $27,725, which she paid in full. Her charges did not reflect the discount negotiated for her with PPO providers providing services under the Plan.

In a letter dated November 1, 2005, Whitcher submitted a claim to Memorial for reimbursement of her medical expenses. On December 22, 2005, Memorial forwarded Whitcher

a December 21, 2005, letter from the claims administrator indicating that Whitcher's claim should not be paid.  That determination was based on the fact that Whitcher had not submitted her claim first to HealthLink for "repricing" (that is, application of the negotiated discount) and that Whitcher did not submit the claim in the standard billing format that included a diagnosis code.  The claims administrator indicated that if Whitcher submitted her claim to HealthLink first and in the appropriate format, it would reconsider her claim.  The claims administrator also noted that Whitcher could submit additional information relevant to her claim and noted Whitcher's right to appeal the denial decision within 60 days of receiving notice of it.

The Plan's internal appeals process by which a participant can appeal an adverse claim decision is set forth at § 9.6(B):

> A claimant whose claim is denied, in whole or in part, may submit a written request to the Claims Administrator for a review of the determination within (60) days after receipt by the claimant of written notification of the denial of the claim. . . . Such claimant, or his duly authorized representative, shall be given the opportunity to review pertinent documents and submit issues and comments in writing.  The Claims Administrator may hold a hearing or conduct an independent investigation regarding the merits of the denied claim.  A decision on review shall be made within sixty (60) days after the receipt of the request for review unless special circumstances require an extension of time. . . .  The claimant shall be given written notice of the decision on review. . . .

The Plan further requires a claimant to exhaust the internal Plan review procedures before filing a lawsuit.  *See* Plan § 9.7.

Whitcher did not appeal the denial of her claim or submit any additional information in support of her claim.  She also declined to submit her claim to HealthLink or to use the standard billing form as requested by the claims administrator.  Instead, on August 6, 2008, she filed a lawsuit in the Circuit Court for the Twentieth Judicial Circuit in St. Clair County, Illinois, against Memorial and its claims administrator.  The defendants removed the case to federal

court, where the Court dismissed the claims administrator and gave Whitcher leave to replead her claim against Memorial. On July 20, 2009, she amended her complaint to allege that Memorial improperly denied her benefits under ERISA.

Memorial now asks the Court to dismiss Whitcher's case because she failed to exhaust the internal Plan remedies. Whitcher claims she exhausted the remedies that were available to her and, to the extent she did not exhaust the remedies listed in the Plan, she should be excused from exhaustion because she had no meaningful access to those remedies and resort to them would have been futile.

### III.  Discovery

As a preliminary matter, in her response Whitcher asks the Court to withhold ruling on the motion for summary judgment until discovery is conducted. Memorial argues that further discovery is not necessary to the exhaustion issue before the Court in the pending motion. It also points out that there has been plenty of time to conduct discovery but Whitcher has failed to do so.

The Court construes Whitcher's request to withhold ruling as a motion under Federal Rule of Civil Procedure 56(f). Rule 56(f) states:

> If a party opposing the [summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
> (3) issue any other just order.

"A party seeking the protection of Rule 56(f) must make a good faith showing that it cannot

5

respond to the movant's affidavits. The rule requires the filing of an affidavit stating the reasons for a claimant's inability to submit the necessary material to the court." *United States v. All Assets & Equip. of W. Side Bldg. Corp.*, 58 F.3d 1181, 1190 (7th Cir. 1995) (footnote and citation omitted); *accord Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n. 5 (7th Cir. 2000).

Whitcher has failed to satisfy Rule 56(f). She has not filed an affidavit showing that, for a specific reason, she cannot present facts justifying her opposition to Memorial's summary judgment motion. Furthermore, even if the Court were to consider the statements in her response brief as justification for an inability to respond, she has not explained why she has been unable to obtain discovery since this case was filed in August 2008 and removed in September 2008. In fact, a scheduling and discovery order was entered January 6, 2009, setting a discovery deadline of June 8, 2009. Whitcher failed to obtain discovery during the appropriate time and cannot now complain that her failure prevents her from responding to Memorial's motion.

For these reasons, the Court will deny Whitcher's request for the Court to withhold ruling on the motion until further discovery can be completed.

## IV.     Analysis

"The text of 29 U.S.C. § 1132, providing for civil actions to redress violations of ERISA, does not address whether a claimant must exhaust her administrative remedies before filing suit in federal court." *Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 807 (7th Cir. 2000). However, in light of § 503 of ERISA, 29 U.S.C. § 1133, which directs employee benefit plans to provide adequate written notice of the reasons for denials of claims by plan participants and to create procedures for the review of such denials of claims, the Seventh Circuit interprets ERISA

as requiring exhaustion of internal plan remedies as a prerequisite to bringing suit under the statute. *Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 826 (7th Cir. 1991). "[T]he decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court." *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138 (7th Cir. 1997) (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)); *accord Gallegos*, 210 F.3d at 808.

In general, "implementing the exhaustion requirement enhances the ability of plan fiduciaries to expertly and efficiently manage their plans by preventing premature judicial intervention and because fully considered actions by plan fiduciaries may assist the courts when they must resolve controversies." *Powell*, 938 F.2d at 826 (citing *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1244 (7th Cir. 1983)). Exhaustion benefits the district court by clarifying the issues and disputes before it. *Lindemann*, 79 F.3d at 650. Furthermore, exhaustion may result in the non-judicial settlement of the plan participant's claims. *Id.* Therefore, it is not lightly set aside.

However the court may excuse an ERISA plaintiff's failure to exhaust internal plan remedies where there is a lack of meaningful access to review procedures or where pursuing internal plan remedies would be futile. *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1236 (7th Cir. 1997). A Plan denies a plaintiff meaningful access to review procedures where it does not afford her "a full and fair review" of the adverse decision by, for example, failing to provide her with access to the evidence relied on to deny her claim. *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402 (7th Cir. 1996) (citing 29 U.S.C. § 1133(2)). In order to demonstrate a failure to exhaust is excused on the basis of futility, a plaintiff must show

that it is *certain* her claim will be denied on appeal; mere doubts about the success of an appeal are not enough. *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 680 (7th Cir. 2002).

  A. <u>Exhaustion of Remedies</u>

Whitcher did not exhaust her internal Plan remedies. The Plan provided that, after her claim for benefits was denied after her surgery, Whitcher could file a written request with the claims administrator for a review of the decision. *See* Plan § 9.6(B). Clearly Whitcher failed to do this. She received notice of the adverse claims payment decision in a letter dated December 22, 2005, and she never requested further review.

Whitcher argues that she exhausted all remedies *available to her*; she believes further internal Plan remedies were not available. In support of her position, she cites *Dale v. Lappin*, 376 F.3d 652 (7th Cir. 2004). However, *Dale* involved whether a plaintiff had exhausted his administrative remedies under 42 U.S.C. § 1997e(a), which explicitly requires exhaustion of "administrative remedies as are available." That statute is not at issue in this case, and *Dale* is not persuasive to the Court. More importantly, Whitcher has not pointed to any obstacle that prevented her from filing a written request for review as required by the Plan. In the absence of any such obstacle, the internal Plan remedy was available to her.

  B. <u>Meaningful Access to Review</u>

Whitcher maintains that her failure to exhaust internal Plan remedies was justified by the lack of meaningful access to the internal Plan review process. *See Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1236 (7th Cir. 1997). She argues that the review provided to her in the Plan was not meaningful because she was not given the opportunity to review the documents supporting the decisions to deny pre-certification or to deny her claim for payment and was not

8

given the opportunity to submit issues and comments in writing. Indeed, as noted above, a plan denies meaningful access to review procedures where it does not afford a claimant access to the evidence relied on to deny her claim. *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402 (7th Cir. 1996) (citing 29 U.S.C. § 1133(2)).

Whitcher cannot say she had no meaningful access to the review procedure where she never attempted to use it. It is true that the Plan clearly guarantees a claimant who seeks review of an adverse decision "the opportunity to review pertinent documents and submit issues and comments in writing." Plan § 9.6(B). However, Whitcher never sought administrative review under § 9.6(B), so she cannot complain that she was not given the rights guaranteed to a claimant who seeks such review. Furthermore, the Court has reviewed the documents informing Whitcher of the adverse decisions and finds that they gave adequate explanation of the grounds for those decisions to enable her to seek internal review. The failure to provide additional documentary evidence to support those decisions or to provide an opportunity for Whitcher to contest them to her satisfaction was caused by her failure to initiate the internal review process and to exercise her rights under that process, not by any deprivation of meaningful access to that process by Memorial or the claims administrator. *See Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000) (claimants failure to timely seek internal plan review does not constitute denial of meaningful access).

    C.    <u>Futility</u>

Whitcher further argues exhaustion of internal Plan remedies would have been futile. She maintains that the claims administrator's patently false reasons for denying pre-certification and payment coverage demonstrate pursuit of the internal Plan review process would have been

9

frivolous. Specifically, she notes that her pre-certification request was denied partly on the ground that her provider was not a member of the HealthLink PPO when he actually was. The request was also denied a second time for lack of medical records showing physician supervision of Whitcher's weight-loss efforts after Dr. Kirk submitted a letter setting forth his supervision of those efforts. Finally, she argues that Memorial insisted on "repricing" her post-surgery claim, which she believed would prevent her from fully recovering the amounts she had paid out-of-pocket.

As noted above, the futility exception excuses exhaustion only if it is *certain* the claim will be denied on appeal. *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 680 (7th Cir. 2002). Here, no reasonable fact-finder could find denial would have been certain. On the contrary, when Whitcher's requests were denied, she was provided specific additional steps she could take to correct her claim so that it could be reevaluated. Reevaluation had the possibility of changing the result and obtaining coverage for the Procedure. Whitcher has no reasonable basis for believing her efforts would be certain to be fruitless.

While the Court understands Whitcher's frustration with the confusing and apparently shifting demands of the claims administrator, they do not point to certain denial of her claim. For example, the patently false assertion that Whitcher's surgeon was not a HealthLink provider could have been easily cleared up had she pointed that out to the claims administrator, either via a supplemental submission or an internal Plan appeal. Indeed, the claims administrator appeared to abandon that basis for denial, presumably realizing its error. To the extent the claims administrator requested medical records after receiving the supplemental memo from Dr. Kirk, that request is reasonable to validate that the memo was not an after-the-fact fabrication of

medical supervision of her weight loss efforts. There is no reason to believe that, had Whitcher been able to obtain and submit her actual medical charts from Dr. Kirk's office showing his supervision, her pre-certification claim would have been certainly denied. Finally, Memorial's request that she submit her claim first to HealthLink for "repricing" to reflect a negotiated discount does not indicate she would never recover her out-of-pocket expenses above the repriced levels. On the contrary, had the charges been "repriced" to reflect the PPO discount, Whitcher could then have sought reimbursement of her overpayment from her providers in the same manner any patient can seek to recoup overpayment to any provider. No evidence suggests "repricing" would foreclose complete recovery for Whitcher.

For these reasons, the Court finds the evidence does not support the finding that Whitcher's pursuit of internal Plan remedies would have been futile.

**V.     Conclusion**

Requiring exhaustion of internal Plan remedies in this case is appropriate. Exhaustion of internal Plan remedies would have enhanced the Plan's efficient administration and likely would have averted judicial intervention. Here, each time the claims administrator denied a request from Whitcher, it explained why with sufficient particularity to allow Whitcher to prepare to appeal the decision. With respect to the second denial of her pre-certification request, the claims administrator also suggested how Whitcher could cure the defect and resubmit her request. The denial of her post-surgery claim for payment also provided the reasons for denial and suggestions about how to cure those defects, and it reminded Whitcher of her right to appeal the decision using the internal Plan review process. Whitcher did not follow up on most of the claims administrator's suggestions. By failing to do so, she did not give the claims administrator

an opportunity to correct its own errors (e.g., the misidentification of Whitcher's surgeon as a non-HealthLink provider), to clarify the Plan's requirements (e.g., to explain the justification for requiring medical records, not just a physician's memo) and to efficiently process claims (e.g., correct submission of a "repriced" claim with a corresponding diagnosis code).  Exhaustion of internal Plan remedies would also have been important to clarify the issues in this case for any further judicial review.  In sum, Whitcher has given no valid reason for her failure to exhaust, and the Court will not excuse it.

For the foregoing reasons, the Court **GRANTS** Memorial's motion for summary judgment (Doc. 43), **DISMISSES** Whitcher's claims against Memorial **without prejudice** for failure to exhaust internal Plan remedies and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  December 23, 2009**

                                              s/ J. Phil Gilbert
                                              **J. Phil Gilbert**
                                              **United States District Court Judge**